**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| WES JOHNSON, ) | 3:05-CV-0321-RAM |
| Plaintiff, ) | |
| ) | **MEMORANDUM DECISION** |
| vs. ) | **AND ORDER** |
| ) | |
| WELLS FARGO HOME MORTGAGE, ) | |
| INC., a California Corporation, dba ) | |
| AMERICA'S SERVICING COMPANY, ) | |
| et. al., ) | |
| ) | |
| Defendants. ) | |

Before the court is Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment (Doc. #70). Plaintiff responded to the motion (Docs. #73, 75) and Defendant replied (Doc. #76).

## I. BACKGROUND

Plaintiff Wes Johnson alleges Defendant Wells Fargo Home Mortgage, Inc. dba America's Servicing Company (ASC) erroneously reported two of Plaintiff's real property mortgage loans (Loans 55 and 56 purchased and serviced by Defendant) delinquent to the credit reporting agencies (Doc.# 73 at 2, Doc. #66 at 3). Furthermore, Plaintiff alleges Defendant foreclosed on Loan 56 and continued to erroneously report both loans delinquent after Plaintiff spent nine months making multiple phone calls and sending correspondence, including cancelled checks and loan documents, verifying the loans were current (Doc. #73 at 2). Plaintiff asserts that, based on Defendant's willful conduct, Plaintiff was precluded from acquiring mortgage loans and refinancing existing loans and was forced to pay higher

interest rates on mortgages and lines of credit (Doc. #73 at 2). Furthermore, Plaintiff asserts existing lines of credit were reduced or cancelled (*Id.*).

Plaintiff's Amended Verified Complaint includes the following causes of action: 1) violations of the Real Estate Settlement Procedures Act (12 U.S.C. § 2605) (RESPA); 2) violations of the Fair Credit Reporting Act (15 U.S.C. § 1681s-2) (FCRA); 3) violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et. seq.) (FDCPA); and, 4) negligence (Doc. #66).

## II. STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a

trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id*.

### III. DISCUSSION

Defendant moves for judgment as a matter of law on all four of Plaintiff's causes of action (Doc. #70). First, Defendant asserts Plaintiff's first cause of action for violations of RESPA must be dismissed because RESPA does not apply to loans obtained to buy rental properties for business purposes (*Id*. at 6-8). Next, Defendant asserts Plaintiff's second cause of action, for violations of the FCRA, must be dismissed because the FCRA does not apply to commercial transactions, no private right of action exists for alleged violations of the initial duties imposed on a furnisher of information by § 1681s-2(a), and no evidence exists that a Credit-Reporting Agency (CRA) notified Defendant that Plaintiff disputed information on Plaintiff's credit report (*Id*. at 8-12). Then, Defendant asserts Plaintiff's third cause of action for violations of the FDCPA must be dismissed because Plaintiff is not a "consumer" and Defendant is not a "debt collector" as defined by the FDCPA (*Id*. at 12-16). Finally, Defendant asserts Plaintiff's fourth cause of action for negligence must be dismissed because it is barred by the economic loss doctrine (Doc. #70 at 17-20).

3

Plaintiff argues his mortgages are federally related mortgage loans subject to RESPA and Defendant is equitably estopped and has waived the argument that RESPA is not applicable (Doc. #73 at 3-7). Additionally, Plaintiff argues he is not contending the FCRA is applicable to his business transactions, but is alleging Defendant did not conduct a reasonable investigation into the accuracy of the information it reported to the CRAs (*Id.* at 7-8). Furthermore, Plaintiff argues that he is, in fact, a "consumer" and Defendant is a "debt collector" as defined by the FDCPA (*Id.* at 8-9). Finally, Plaintiff argues the economic loss doctrine is not applicable and Defendant's failure to raise its affirmative defenses in its answer constitutes a waiver (*Id.* at 9, Doc. #75 at 2-3).

Defendant replies that Plaintiff is not a consumer under any of the federal acts upon which he sues and Defendant did not waive any defenses (Doc. #76).

**A.   Waiver of Defenses**

Plaintiff asserts each of Defendant's defenses are affirmative defenses; therefore, Defendant's failure to plead such defenses constitutes a waiver (Doc. #75 at 2). Plaintiff further asserts that Defendant admitted in its Answer at paragraphs 23 and 24 and in its affirmative defenses numbers 2, 10, 11, 14 and 15 that it complied with RESPA; therefore, Defendant is estopped from taking two different positions in the same action and has, therefore, waived any contention that RESPA doesn't apply (Doc. #73 at 3).

If Defendant did, in fact, waive its defenses, the remaining issues in the instant motion are moot; therefore, the court will address this issue first.

1.   Affirmative Defenses

FED. R. CIV. P. 8(c) provides:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and *any other matter constituting an avoidance or affirmative defense*. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a

4

defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

FED. R. CIV. P. 8(c) (emphasis added). The question is whether Defendant's defenses fall within the language "any other matter constituting an avoidance or affirmative defense." *Id.*

The Ninth Circuit has held "[a] defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (*citing Flav-O-Rich v. Rawson Food Service, Inc. (In re Rawson Food Service, Inc.)*, 846 F.2d 1343, 1349 (11th Cir. 1988)). The Eleventh Circuit explained, in *Rawson Food Service, Inc.*, that a defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense. 846 F.2d at 546. "An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case; as such, they are derived from the common law plea of 'confession and avoidance.' On the other hand, some defenses negate an element of the plaintiff's *prima facie* case; these defenses are excluded from the definition of affirmative defense in Fed.R.Civ.P. 8(c)." 846 F.2d at 1349 (*citing Ford Motor Co. v. Transport Indemnity Co.*, 795 F.2d 538, 546 (6th Cir. 1986)) (internal citations omitted). Furthermore, "it is well established that '[t]he party asserting an affirmative defense usually has the burden of proving it.'" 846 F.2d at 1349 (*citing Drexel Burnham Lambert Group Inc. v. Galadari*, 777 F.2d 877, 880 (2d Cir. 1985)).

        a.    *Applicability of Federal Statutes to Plaintiff's Claims*

Plaintiff has the burden of proving his claims are properly asserted; therefore, whether or not Plaintiff's first, second and third causes of action properly fall under the federal statutes is not a matter (or question) "extraneous[1]" to Plaintiff's *prima facie* case. To the contrary, Defendant's defenses, if true, negate an element of Plaintiff's *prima facie* case.

---

[1] "An extraneous question is a question that is beyond or beside the point to be decided." BLACK'S LAW DICTIONARY 606 (7th ed. 1999).

5

*Rawson Food Service, Inc.*, 846 F.2d at 546. Furthermore, Defendant's defenses clearly point out defects in Plaintiff's *prima facie* case and, therefore, are not affirmative defenses. *Id*. Accordingly, Plaintiff did not waive these defenses.

      b.     *Economic Loss Doctrine*

Plaintiff asserts the economic loss doctrine is an affirmative defense and, therefore, has been waived. However, Plaintiff provides no authority or support for his conclusory statement that "Defendant did not plead as an affirmative defense: 1) the economic loss doctrine." (Doc. #75 at 2).

It appears no court, in the Ninth Circuit or otherwise, has held the economic loss doctrine is an affirmative defense and at least one court has expressly held the economic loss doctrine is not an affirmative defense which can be waived under FED. R. CIV. P. 12(h)(1). *St. Paul Mercury Ins. Co. v. Viking Corp.*, 2007 WL 129063, 21 (E.D. Wis. 2007) (official citation not available). The *Viking Corp.* court reasoned, and this court finds persuasive, that "courts regularly decide motions to dismiss under Rule 12(b)(6) based on the economic loss doctrine. Given that it is improper to grant a motion to dismiss under Rule 12(b)(6) on the basis of an affirmative defense, it logically follows that the economic loss doctrine is not an affirmative defense which must be pled as such." *Id*. At 22. Accordingly, Defendant did not waive this defense.

    2.    <u>Inconsistent Positions</u>

Plaintiff argues that by admitting compliance with RESPA Defendant has waived any contention that RESPA does not apply to the two mortgages at issue (Doc. #73 at 3). Plaintiff contends that by admitting compliance, Defendant has ultimately admitted it was *required* to comply with RESPA. However, Defendant does not assert that it was required to comply with RESPA; Defendant asserts that "standard loan servicing procedure requires compliance with RESPA, regardless of the purpose of the Loan." (Doc. #76 at 2). In other words,

6

although RESPA does not apply to these loans, Defendant has nevertheless complied with RESPA's requirements.

Defendant may properly plead alternate defenses under FED. R. CIV. P. 8(e)(2). Rule 8(e)(2) provides, in pertinent part:

> A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11.

FED. R. CIV. P. 8(e)(2).

Here, the issue is one of alternative pleading. The Ninth Circuit has held that "[i]n light of the liberal pleading policy embodied in Rule 8(e)(2) … a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case." *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir.), *cert. dismissed*, 473 U.S. 934 (1985); *see also, McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990). Under Rule 8(e)(2), Defendant may properly assert that RESPA does not apply, and in the alternative if RESPA does apply, Defendant has complied. Therefore, Plaintiff has not waived this defense.

**B.    RESPA Claims**

Defendant asserts Plaintiff's RESPA claims must be dismissed because RESPA does not apply to credit transactions "primarily for business, commercial or agricultural purposes" (Doc. #70 at 6). Defendant contends Plaintiff's loans were used to acquire two four-plex rental properties for business purposes, which Plaintiff never intended to nor actually did occupy (Doc. #70 at 7-8).

7

Plaintiff argues his two mortgage loans are "federally related mortgage loans" and are, therefore, subject to RESPA (Doc. #73 at 4). Plaintiff further argues that RESPA applies because the loans were used to purchase real property and each loan was secured by real property (*Id.*).

Defendant responds that Plaintiff's loans are not "federally related mortgage loans" under RESPA because Regulation Z plainly excludes commercial and business purpose loans from RESPA's definition (Doc. #76 at 3). Defendant asserts RESPA directs the district court to apply the Truth in Lending Act's (TILA's) definition of commercial transactions, which is outlined in Regulation Z, and under Regulation Z credit obtained to acquire rental property that is not owner occupied is deemed to be for business purposes (*Id.* at 4).

1. Definition of "Federally Related Mortgage Loan"

The term "federally related mortgage loan" includes any loan which "is secured by a first or subordinate lien on residential property (including individual units of condominiums and cooperatives) designed principally for the occupancy of from one to four families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property ..." 12 U.S.C. § 2602(1)(A). The loan must also meet one of four other requirements expressed in the statute. *Id.*

The parties do not dispute that Plaintiff's loans may fall under the definition of "federally related mortgage loan" as it is defined in the statute. However, the parties do dispute whether RESPA applies to the loans.

2. Applicability of RESPA to a "Federally Related Mortgage Loan"

While RESPA does apply to federally related mortgage loans, RESPA explicitly exempts certain federally related mortgage loans from its coverage. 24 C.F.R. § 3500.5. Under paragraph (b) of Regulation X, "business purpose loans" (defined as "[a]n extension of credit primarily for a business, commercial, or agricultural purpose, as defined by Regulation Z, 12 C.F.R. 226.3(a)(1)") are excluded from RESPA's coverage. 24 C.F.R. §

8

3500.5(b)(2). In determining whether Plaintiff's loans fall under RESPA's definition of "business purpose loans", Regulation X directs this court to rely on Regulation Z. *Id*. Regulation Z expressly provides, in pertinent part, that "[c]redit extended to acquire … rental property (regardless of the number of housing units) that is not owner-occupied is deemed to be for business purposes….[furthermore, even] [i]f credit is extended to acquire rental property that is or will be owner-occupied within the coming year…[c]redit extended to acquire rental property is deemed to be for business purposes if it contains more than 2 housing units." 12 C.F.R. Pt. 226, Supp. 1., § 226.3 at Comment 3(a)-3, 3(a)-4.

Here, it is undisputed that Plaintiff acquired two four-plex rental properties, neither of which are now or ever were owner-occupied. Therefore, based on RESPA's clear direction to rely on Regulation Z and Regulation Z's unambiguous definition of "business purpose loans", Plaintiff's loans obtained to acquire two four-plex rental properties constitute "business purpose loans" and are exempted from RESPA.

Accordingly, summary judgment on Plaintiff's RESPA claims is **GRANTED**.

**C.  FCRA Claims**

Defendant asserts Plaintiff's FCRA claims must be dismissed because the FCRA does not apply to Plaintiff's business transactions, there is no evidence a CRA notified Defendant that Plaintiff disputed information it provided and there is no private right of action for violations of § 1681s-2(a) (Doc. #70 at 8-12)**.**

Plaintiff argues he is not asserting a cause of action under § 1681s-2(a) and Defendant admitted being notified that Plaintiff disputed information it reported to the CRAs (Doc. #73 at 7-8). Furthermore, Plaintiff alleges Defendant violated § 1681s-2(b) by failing to conduct a reasonable investigation into the accuracy of the information Defendant reported to the CRAs (Doc. #73 at 7-8).

Defendant responds that the FCRA is inapplicable to reports used for commercial purposes and it has not admitted it was notified by a CRA about Plaintiff disputing any information it provided to a CRA (Doc. #76 at 5-6).

Defendant basically argues that, as a furnisher of information, it cannot be held liable under the FCRA for inaccurately reporting information to a CRA and failing to investigate disputed information if the transactions at issue are commercial transactions. However, Defendant cites no Ninth Circuit case law to support this contention. Furthermore, the cases cited by Defendant deal with credit reports obtained and utilized for commercial purposes, not the liability of furnishers of information to a CRA regarding a commercial transaction. *See Mathews v. Worthen & Trust Co.*, 741 F.2d 217, 219 (8th Cir. 1984) (finding a particular transaction exempt from the FCRA because the credit report was used solely for a commercial purpose); *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1036 (S.D.N.Y. 1996) (The loss of plaintiff's opportunity to participate in a real estate enterprise due to adverse information included in a furnished credit report is not the sort of loss cognizable under the FCRA); *Lucchesi v. Experian Information Solutions, Inc.*, 226 F.R.D. 172, 174 (S.D.N.Y. 2005) (report issued in connection with a business operated by the consumer cannot form basis of liability under the FCRA).

The Ninth Circuit has applied the FCRA broadly, focusing on the purpose for which the information was obtained by the CRA in addition to the purpose for which the credit report was sought. *Hansen v. Morgan*, 582 F.2d 1214 (9th Cir. 1978). In *Hansen*, although analyzing a different subsection under the FCRA, the Ninth Circuit explained:

Section 1681a(d) of Title 15 defines "consumer report" to be:

". . . Any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title. *

10

> \* \* \* " (Emphasis added.)
>
> The credit report issued on the Hansens in this case falls directly within this definition. Since the Pocatello Credit Bureau knew nothing of the Morgans' real reason for requesting the report, it must have supplied this information with the expectation that the Morgans would use it for purposes consistent both with the FCRA and with the Bureau's form membership contract which closely correlated with the restrictions in the act. And unless the Bureau was generally collecting such information for purposes not permitted by the FCRA, it must have collected the information in the report for use consistent with the purposes stated in the act. There has been no suggestion otherwise. Accordingly, the credit report is (1) a written communication of information (2) by a consumer reporting agency (3) bearing on the Hansens' credit worthiness, credit standing or credit capacity (4) *which was both expected to be used, and collected in whole or in part, for the purpose of establishing the Hansens' consumer eligibility for credit transactions*. As such it is a consumer report under the FCRA.

*Hansen*, 582 F.2d at 1218 (emphasis added).

Citing to *Hansen*, the Seventh Circuit held that "a consumer may establish that a particular credit report is a 'consumer report' falling within the coverage of the FCRA if: (1) the person who requests the report actually uses the report for one of the 'consumer purposes' set forth in the FCRA; (2) the consumer reporting agency which prepares the report 'expects' the report to be used for one of the 'consumer purposes' set forth in the FCRA; or (3) the consumer reporting agency which prepared the report originally collected the information contained in the report expecting it to be used for one of the 'consumer purposes' set forth in the FCRA." *Ippolito v. WNS, Inc.*, 864 F.2d 440, 449 (7th Cir. 1988).

The district court in the Western District of Kentucky also provides a persuasive analysis on this very issue, in *Breed v. Nationwide Ins. Co.*, 2007 WL 1231558, 1-2 (W.D. Ky. 2007) (official citation not available), finding the plaintiff was entitled to at least proceed to trial. In *Breed*, the issue before the court was whether the reports produced by Trans Union that allegedly resulted in denials of credit and increased interest rates were "consumer reports" under the FCRA. *Id.* at 1. The plaintiff was a real estate investor who bought properties, rehabilitated them and then resold them for profit. *Id.* CCS, the furnisher of information, allegedly erroneously reported a negative item to Trans Union, which negatively

11

affected the plaintiff's ability to procure credit. *Breed*, 2007 WL 1231558 at 1. The plaintiff alleged damages incurred as a result of higher interest rates on five mortgages and being denied credit three times when trying to purchase a vehicle. *Id.* The district court initially held such damages were not recoverable under the FCRA because they arose from commercial transactions. *Id.* However, after further reviewing the developing case law, the district court withdrew its previous opinion finding the plaintiff could pursue his FCRA theory at least through trial. *Id.* at 1-2. Noting the Circuits are split as to whether the consumer's purpose for obtaining credit necessarily determines whether the report is a consumer report under the FCRA, the district court concluded that the developing case law does not provide a definitive or reliable answer. *Id.* at 2. Furthermore, the district court determined that the majority of Circuits, including the Ninth Circuit, suggest the expectations of the CRA at the time it prepared the credit report and at the time it collected the information contained in the report should be considered; therefore, to avoid injustice, the district court declined to dismiss any claims solely because they involved commercial transactions. *Id.*

Defendant's argument that Plaintiff may not recover under the FCRA for losses resulting from the use of a credit report obtained solely for a commercial transaction is an accurate statement; however, it does not follow that because Defendant is reporting information regarding a commercial transaction to the CRAs, it is somehow insulated from all liability under the FCRA with regards to that transaction. Subsequent credit reports issued for "consumer purposes" containing the inaccurate information arguably do fall under the coverage of the FCRA. *See Hansen*, F.2d at 1218.

Plaintiff asserts Defendant's erroneous reporting of inaccurate information and willful failure to reasonably investigate the disputed information caused "credit lines to be reduced; credit line cancelled; credit line denied; two commercial loans denied; and personal financing denied." (Doc. #66 at 6). Under these facts, the credit reports obtained for Plaintiff's commercial loans do not fall under the FCRA; however, the credit reports obtained in

12

connection with Plaintiff's credit lines (provided they are personal lines of credit and not business lines of credit) and personal financing are "consumer reports" falling within the coverage of the FCRA.

The Ninth Circuit expressly recognizes a consumer's cause of action against a furnisher of credit information under § 1681s-2(b), *see Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1058 (9th Cir. 2002), and there is a genuine issue of material fact as to whether Defendant was properly notified of the disputed information. Furthermore, there are genuine issues of material fact, as set forth above, precluding summary judgment on Plaintiff's FCRA claims.

Accordingly, summary judgment on Plaintiff's FCRA claims is **DENIED**.

**D.     FDCPA Claims**

Defendant asserts Plaintiff's FDCPA claims must be dismissed because Plaintiff is not a "consumer" and Defendant is not a "debt collector" as defined by the Act (Doc. #70 at 12). Specifically, Defendant asserts the FDCPA does not apply to Plaintiff's loans because they are commercial in nature and the FDCPA does not apply to Defendant because Defendant did not act as a debt collector (*Id.* at 12-16).

Plaintiff argues the two loans are primarily for personal, family or household purposes and the real properties are part of Plaintiff's retirement planning; therefore, they are not commercial in nature (Doc. #73 at 8-9). Plaintiff further argues Defendant is a debt collector because Defendant used ASC to collect the debt and Plaintiff did not discover ASC was actually Defendant until prior to filing his complaint (Doc. #73 at 9). Finally, Plaintiff argues it is a question of fact as to whether Defendant is a debt collector (*Id.*).

Defendant responds that Plaintiff's theory of claiming the loans are part of his retirement planning, where he does not assert he ever actually lived in any of the rental properties, is untenable (Doc. #76 at 7).

///

13

### 1. Consumer Debt vs. Business Debt

"The FDCPA protects consumers from unlawful debt collection practices. Consequently, the Act applies to consumer debts and not business loans. The term 'debt' is defined as: [A]ny obligation or alleged obligation *of a consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes* ... 15 U.S.C. § 1692a(5)." *Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (emphasis in original). "When classifying a loan, courts typically 'examine the transaction as a whole,' paying particular attention to 'the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature.'" 972 F.2d at 1068 (*citing Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980)). "The Act does not define 'transaction' but the consensus judicial interpretation is reflected in the Seventh Circuit's ruling that the statute is limited in reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or contract for *consumer-related goods or services*.'" *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004) (internal citations omitted) (emphasis added).

At least one other district court has expressly found the FDCPA does not apply to rental properties. *Piper v. Portnoff Law Associates*, 215 F.R.D. 495, 502, n.10 (E.D. Pa. 2003). In making this determination, the district court reasoned that obligations owed by individuals who owned their property for business purposes did not qualify as debts under the FDCPA because the services were not primarily for personal, family or household purposes. *Piper*, 215 F.R.D. at 501. This reasoning is persuasive and in line with "consensus judicial interpretation." *Turner*, 362 F.3d at 1227.

Plaintiff does not dispute he acquired the loans to purchase two four-plexes in Portland, Oregon, which are rental properties, and that he never resided in either of the rental properties. Plaintiff merely asserts that "[t]he mortgages are primarily for personal, family

14

or household purposes ... [because] ... the real properties are part of, among other purposes, the Plaintiff's retirement planning ... [and] ... [p]lanning for one's retirement is not a business loan." (Doc. #73 at 8). Plaintiff also asserts this question is a question of fact for the jury (*Id.*).

As stated above, the Ninth Circuit instructs the district court, not the fact finder, to examine the transaction as a whole in determining whether it was primarily consumer or commercial in nature. *Bloom*, 972 F.2d at 1068. Here, Plaintiff is a real estate investor and developer in multiple states and has purchased over one hundred residential and commercial investment properties (Doc. #70 at 2). The two loans at issue were used to acquire two residential investment properties in order to collect rental payments (*Id.* at 3-4). Plaintiff has not used either of these rental properties for his personal residence or for any other personal, family or household purpose. Furthermore, Plaintiff cites to no authority supporting the proposition that obtaining rental properties, which he does not occupy, but merely uses to collect rental payments, is still consumer in nature because he uses the properties for retirement planning. Under these facts, Plaintiff's debt is business in nature, not consumer in nature.

2. Debt Collector

Plaintiff argues Defendant is a "debt collector" because the mortgages were originally obtained through Resource Concepts and were eventually assigned to Defendant, Plaintiff did not discover ASC was actually Defendant until prior to filing his complaint and not knowing this relationship would lead a person to believe the debts were being collected by a third party (Doc. #73 at 9).

While the term "debt collector" includes "any creditor, who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts", 15 U.S.C. § 1692a(6), Plaintiff's Amended Verified Complaint fails to allege that Wells Fargo used a name which would indicate a third

15

person was collecting or attempting to collect a debt. Plaintiff alleges violations of §§ 1692d, 1692e, 1692f, 1692g and 1692h asserting the following facts: Wells Fargo acquired the loans on July 1, 2004 (Doc. #66 at 3); Plaintiff made timely payments on the loans throughout the assignment (*Id.* at 4); Wells Fargo made an error by not crediting two payments to Loan 56 (*Id.*); Wells Fargo misapplied check 1080 to another account(*Id.*); Wells Fargo would not correct its error and alleged Loan 55 and Loan 56 were delinquent (*Id.* at 6); and, Wells Fargo eventually commenced foreclosure on Loan 56 (*Id.* at 9). Plaintiff's allegations indicate Plaintiff was fully aware that Defendant acquired the loans and Defendant attempted to collect the debt owed on those loans. Under these facts, Defendant is a creditor, not a debt collector.

Accordingly, summary judgment on Plaintiff's FDCPA claims is **GRANTED**.

**E.    Negligence Claim**

Defendant asserts Plaintiff's negligence claim should be dismissed because it is barred by Oregon's economic loss doctrine (Doc. #70 at 17). Specifically, Defendant asserts that Plaintiff has not alleged a special relationship exists between Defendant and Plaintiff and, furthermore, Defendant did not owe Plaintiff a duty outside the realm of common law negligence standards (*Id.* at 18). Defendant further asserts the federal statutes do not create a duty beyond that of ordinary negligence, and even if a special relationship existed, Defendant's duty is limited by the foreseeability of the harm (*Id.* at 19-20).

Plaintiff argues the economic loss doctrine does not bar his claim because RESPA and the FCRA impose a statutory duty on Defendant owed to Plaintiff (Doc. #73 at 9).

Defendant responds that none of the federal statutes relied upon by Plaintiff actually apply to him; therefore, Plaintiff's negligence claim is barred (Doc. #76 at 9).

As previously discussed, the only federal statute applicable to Plaintiff's claims is the FCRA; therefore, the Court's analysis of the economic loss doctrine is limited to the FCRA.

The FCRA expressly precludes negligence actions against a furnisher of information, except under certain circumstances. Section 1681h(e) provides as follows:

> *Except as provided in sections 1681n and 1681o of this title*, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or *negligence* with respect to the reporting of information against any consumer reporting agency, Any user of information, *or any person who furnishes information to a consumer reporting agency*, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, *Except as to false information furnished with malice or willful intent to injure such consumer*.

15 U.S.C. § 1681h(e) (emphasis added).

Plaintiff alleges Defendant willfully violated §1681s-2(b) by failing to conduct a reasonable investigation of the debt it reported to the CRAs after being notified the debt was in dispute (Doc. #66 at 12). Plaintiff also alleges Defendant violated, among others, §§ 1681g and 1681h (*Id*. at 6). However, Plaintiff makes no allegations that Defendant furnished false information to the CRAs with malice or a willful intent to injure Plaintiff. Therefore, under these facts, the FCRA precludes Plaintiff's negligence claim.

Because the FCRA precludes Plaintiff's negligence claim, the district court need not decide whether Oregon's economic loss doctrine bars this claim.

Accordingly, summary judgment on Plaintiff's negligence claim is **GRANTED**.

### IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. #70) is **GRANTED** as to Plaintiff's First, Third and Fourth Causes of Action and **DENIED** as to Plaintiff's Second Cause of Action.

DATED:  October 29, 2007.

_____
UNITED STATES MAGISTRATE JUDGE