1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

8
9
10
11
12
13
14

| | | |
|---|---|---|
| WES JOHNSON, | ) | 3:05-CV-0321-RAM |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM  DECISION** |
| | ) | **AND ORDER** |
| vs. | ) | |
| | ) | |
| WELLS FARGO HOME MORTGAGE, | ) | |
| INC., a California Corporation, dba | ) | |
| AMERICA'S SERVICING COMPANY, | ) | |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the court is Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss for Spoliation of Evidence (Doc. #129).  Plaintiff responded to the motion (Docs. #133, 135) and Defendant replied (Doc. #140).

## I.  RELEVANT FACTUAL BACKGROUND

Plaintiff Wes Johnson alleges Defendant Wells Fargo Home Mortgage, Inc. dba America's Servicing Company (ASC) erroneously reported two of Plaintiff's real property mortgage loans (Loans 55 and 56 purchased and serviced by Defendant) delinquent to the credit reporting agencies (Doc. #66).  Plaintiff further alleges Defendant foreclosed on Loan 56 and continued to erroneously report both loans delinquent after Plaintiff spent nine (9) months making multiple phone calls and sending correspondence, including cancelled checks and loan documents, verifying the loans were current (*Id.*).  Plaintiff asserts that, based on Defendant's willful conduct, Plaintiff was precluded from acquiring mortgage loans and refinancing existing loans and was forced to pay higher interest rates on mortgages and lines

of credit (Doc. #66).  Furthermore, Plaintiff asserts existing lines of credit were reduced or cancelled (*Id*.).

Defendant contends Plaintiff supports his FCRA claim with various letters he drafted on his two laptops, which rest at the very foundation of Plaintiff's claim (Doc. #129 at 3). Defendant further contends computer evidence reveals Plaintiff may have manufactured these documents to support his claim and then flagrantly reformatted the hard drives on these laptops shortly after Defendant informed him that they had been formally requested and were relevant to the case (*Id*.).  Plaintiff objected to Defendant's request for production; however, he indicated he would produce documents located on the laptops if Defendant would specify which documents it was requesting (*Id*. at 4). After Defendant's many attempts to come to a resolution over this discovery request, Defendant ultimately filed a motion to compel the hard drives, which the court granted (*Id*. at 5).  However, prior to the motion to compel, but after the request for production, Plaintiff reformatted and/or reinstalled both hard drives (*Id*.).

Defendant eventually received the hard drives and hired a forensic computer expert to perform a forensic analysis of Plaintiff's hard drives, which revealed that both laptops had been reformatted and/or reinstalled (*Id*. at 5-6). The analysis further retrieved two (2) letters saved on both hard drives (*Id*. at 7-9). Defendant's expert, however, informed Defendant that because there is no record of what content and files were on the hard drives prior to the time they were reformatted and/or reinstalled, he will not be able to determine what has been overwritten and, as such, the information is not currently searchable or recoverable (*Id*. at 7).  Plaintiff has not produced any saved back-up files of the information that was on the hard drives prior to the reformatting/reinstallation.  Therefore, Defendant claims it has been severely prejudiced based on Plaintiff's willful conduct warranting dismissal of Plaintiff's FCRA claim (*Id*. at 9).

///

## II.  MOTION TO DISMISS UNDER RULE 37 OR COURT'S INHERENT
## POWERS FOR SPOLIATION OF EVIDENCE

"There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of the federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337-1338 (9th Cir. 1985); FED R. CIV. P. 37(b)(2)(C)). Here, Defendant brings the instant motion pursuant to Rule 37 and the court's inherent power to levy sanctions; however, the record indicates Plaintiff's conduct was not in violation of any discovery order governed by Rule 37 as the conduct giving rise to the instant motion occurred prior to the filing of Defendant's motion to compel production of Plaintiff's hard drives.  Thus, the court must turn to its "inherent power to levy sanctions" in determining whether to sanction Plaintiff for spoliation of evidence.

"Before imposing the harsh sanction of dismissal, the district court must weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).  While the district court need not make explicit findings regarding each factor, *United States ex. rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir. 1988), "[f]or dismissal to be proper, the conduct to be sanctioned must be due to willfulness, fault, or bad faith. [Furthermore,] [d]ue process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threaten[s] to interfere with the rightful decision of the case." *Anheuser-Busch*, 69 F.3d at 348 (internal quotations and citations omitted).  "The district

1  court *must* [also] consider 'less severe alternatives' than outright dismissal.'" *Leon*, 464 F.3d
2  at 958 (emphasis added).

3  Plaintiff engages in spoliation of evidence as a matter of law only if he had some notice
4  that the evidence was potentially relevant to the litigation before it was destroyed. *United*
5  *States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002) (citing *Akiona v.*
6  *United States*, 938 F.2d 158, 161 (9th Cir. 1991)).  Where the relevance of and resulting
7  prejudice from the destruction of evidence cannot be clearly ascertained because the evidence
8  no longer exists, a party "can hardly assert any presumption of irrelevance as to the destroyed
9  [evidence]." *Leon*, 464 F.3d at 959 (citing *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173,
10  1205 (8th Cir.1982)).

11                              **III.  DISCUSSION**

12  Defendant requests dismissal of Plaintiff's remaining FCRA claim on the grounds that
13  "Plaintiff destroyed evidence on his hard drives to prevent the truth from coming out." (Doc.
14  #129 at 2).  Defendant asserts that "Plaintiff has altered numbers on correspondence and
15  checks, fabricated evidence to bolster his position, and most recently, erased his hard drives
16  knowing the information on them was relevant to this action." (*Id.*).  Defendant goes on to
17  assert that Plaintiff's "despicable behavior was intended to hamper the fact gathering process
18  by preventing Wells Fargo from obtaining highly relevant information that may have defeated
19  his only remaining claim under the Fair Credit Reporting Act and his damage claims." (*Id.*).
20  Defendant contends an adverse jury instruction and monetary sanctions are not enough
21  because the relevant documents no longer exist and that, instead, Plaintiff's calculated and
22  willful misconduct warrants dismissal of this action (*Id.*).

23  Plaintiff argues that his laptops were infected with computer viruses and spy-ware and
24  that a computer technician diagnosed the problem and recommended wiping clean and
25  reformatting each hard drive and then reinstall the operating systems (Doc. #133 at 4).
26  Plaintiff claims that before this procedure is performed, data on the hard drive is backed up
27  and saved and then downloaded back onto the hard drive after the operating system is
28                                         4

1   reinstalled (Doc. #133 at 4). Thus, Plaintiff argues Defendant's motion should be denied

2   because no data has been destroyed (*Id.*).[1]

3         Defendant responds that there is no dispute Plaintiff erased data from his hard drives

4   and, although Plaintiff claims the information was saved before it was erased, Plaintiff has

5   failed to produce any back-up files of the saved information despite numerous requests to do

6   so (Doc. #140 at 1-3). Defendant further responds that Plaintiff had an obligation to preserve

7   the information on his hard drives, as he knew the information contained on his hard drives

8   was relevant to this action (*Id.* at 3). Defendant also points out that Plaintiff reformatted his

9   hard drives within a short time of one another while Defendant was actively seeking

10  production of the hard drives (*Id.*). Defendant contends that it has been prejudiced by

11  Plaintiff's willful acts because relevant information that it could have used in defending

12  against this lawsuit is forever lost (*Id.*). Defendant also alleges that Plaintiff's wife provided

13  false testimony regarding the hard drives by failing to mention the fact that they were

14  reformatted only a week or two prior to her deposition when she was specifically asked if any

15  work had been performed on their computers (*Id.* at 4). Thus, Defendant contends, that

16  taking into consideration all the surrounding circumstances, a dismissal is the proper

17  sanction for Plaintiff's conduct (*Id.* at 5).

18  **A.**   **Notice the Evidence was Potentially Relevant**

19        Plaintiff does not dispute Defendant's assertion that the evidence located on his hard

20  drives is relevant to this action. Furthermore, the record shows Defendant requested

21  production of the hard drives well before Plaintiff deleted the files and reformatted his hard

22  drives. Defendant first requested Plaintiff's hard drives on July 28, 2007 (Doc. #129, Exh.

23  1). Plaintiff objected to Defendant's request on September 14, 2007, then Defendant sent

24

---

25      [1] In a supplemental response, Plaintiff also argues that Rule 37(e) precludes the court from
     issuing sanctions because "exceptional circumstances do not exist and because the computers hard
26  drives were serviced as a result of a routine, good faith operation of the laptops …" (Doc. #135 at 2).
     However, as previously explained, Rule 37 is inapplicable under these facts because the conduct giving
27  rise to this action was not in violation of any discovery order governed by Rule 37.

28

numerous e-mails regarding its request for the hard drives from September 14, 2007 to October 10, 2007, when Defendant finally filed its motion to compel (Doc. #129, Exh. 1). It was during this time frame, while Plaintiff's counsel was receiving correspondence and numerous requests regarding the hard drives, that Plaintiff deleted files and reformatted both hard drives on September 25, 2007 and October 5, 2007, respectively (*Id.*). Thus, the record indicates Plaintiff was clearly on notice that evidence located on his hard drives was potentially relevant to this litigation. Thus, this factor weighs against Plaintiff.

**B.   <u>Willfulness, Fault or Bad Faith</u>**

Defendant contends Plaintiff's conduct was willful due to the timing of the reformatting and/or reinstalling of his hard drives (*Id.* at 10). Plaintiff does not argue that his conduct of reformatting his hard drives was not willful; but, insists that he did not destroy evidence because he backed up and saved the information on his hard drives during the reformatting process (Doc. #133 at 4). Therefore, Plaintiff contends that no data has been destroyed (*Id.*).

The totality of the circumstances indicates Plaintiff's conduct was, in fact, willful. Plaintiff was clearly on notice that Defendant was seeking relevant information on his hard drives. "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959 (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002) (emphasis added) (internal quotation marks and citation omitted)). Although Plaintiff claims he didn't destroy any documents, he has not produced any back-up files to show he did, in fact, download *all* the files back onto the hard drives. Furthermore, although Plaintiff objected to production of the hard drives, he did indicate he would produce specific documents on his hard drives if Defendant specified which documents it was seeking and if he had not already produced those documents (Doc. #129 at 4). Thus, Plaintiff clearly had some notice that the documents located on his hard drives were relevant to this litigation.

/ / /

The timing of Plaintiff's reformatting of his hard drives is also very suspect. Plaintiff reformatted both hard drives within a few days of each other, not only during the period of time he knew Defendant sought production of the hard drives, but also after Defendant informed Plaintiff, on September 20, 2007, that it intended to file a motion to compel production of the hard drives (*Id*., Exh. 6). Within five (5) days of being notified that Defendant intended to file a motion to compel, Plaintiff reformatted his first hard drive (*Id*., Exh. 1). Then within ten (10) days of reformatting his first hard drive, Plaintiff reformatted his second hard drive (*Id*.). During this entire period of time, Defendant sent numerous e-mails to Plaintiff attempting to settle the dispute over production of the hard drives (*Id*.).

Plaintiff's explanation that he reformatted his hard drives because they were infected with viruses and spy-ware and then he downloaded all the files back onto the hard drives is of little help to the court in finding an absence of willfulness or bad faith. At no time did Plaintiff inform Defendant that his hard drives were infected with viruses or spy-ware, despite having knowledge Defendant requested production of said hard drives. And, as previously stated, Plaintiff has produced no evidence of any back-up files, nor has he indicated that he will produce any back-up files to show that he did, in fact, download all the files back onto the hard drives.

Under these facts, the evidence weighs heavily against Plaintiff and tends to show Plaintiff did, in fact, willfully reformat his hard drives knowing Defendant was vehemently requesting production of those hard drives. Thus, this factor also weighs against Plaintiff.

**C.**     **Relationship Between Misconduct and Matters in Controversy**

It is clear, and the parties do not dispute, there is a direct relationship between Plaintiff reformatting his hard drives and the matters in controversy. Thus, this factor weighs against Plaintiff.

///

///

///

1   **D.    <u>Prejudice to Defendant</u>**

2        Defendant asserts it is severely prejudiced by Plaintiff's destruction of evidence

3   because relevant information it could have used to defend itself is forever lost (Doc. #129 at

4   12).  Defendant contends Plaintiff has inflicted the ultimate prejudice on it by preventing it

5   from offering the best evidence refuting Plaintiff's $40,000,000 claim (Doc. #129 at 12).

6   Defendant asserts several e-mails are missing and the examination of Plaintiff's hard drive

7   reveals Plaintiff tampered with relevant evidence and, possibly, manufactured and created

8   documents just weeks before filing this lawsuit (*Id.*).

9        Plaintiff does not specifically address the prejudice to Defendant; he simply asserts no

10   data has been destroyed, indicating there is no prejudice to Defendant (Doc. #133 at 4).

11        "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability

12   to go to trial or threaten to interfere with the rightful decision of the case." *Malone v. United*

13   *States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987), *cert. denied sub nom, Malone v.*

14   *Frank*, 488 U.S. 819 (1988).  "Whether prejudice is sufficient to support an order of dismissal

15   is in part judged with reference to the plaintiff's excuse for the [conduct]." *Id.* (citing *Nealey*

16   *v. Transportac ion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1280 (9th Cir. 1980)).  Delay

17   alone has been held to be insufficient prejudice; however, failure to produce documents as

18   ordered is considered sufficient prejudice. *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406,

19   1412 (9th Cir. 1990), *cert. denied*, *Lewis & Co. v. Thoeren*, 498 U.S. 1109 (1991).

20        Here, we are not dealing with a failure to produce documents as ordered because

21   Plaintiff reformatted his hard drives prior to the court ordering production of said hard

22   drives.  However, Defendant has shown some prejudice, nonetheless, based on expert

23   testimony suggesting Plaintiff may have altered or manufactured relevant documents and

24   that some documents may be missing.  In addition, as previously stated, Plaintiff's

25   explanation is of little help given the timing of the conduct and Plaintiff's knowledge that

26   Defendant was adamantly requesting the hard drives.  Thus, this factor weighs against

27   Plaintiff.

28

1

**E.**      **Less Drastic Sanctions**

2          Defendant contends less drastic sanctions are not appropriate in this case (Doc. #129

3   at 14). Specifically, Defendant contends excluding evidence regarding Plaintiff's contacts with

4   Defendant and an adverse jury instruction are not adequate sanctions because Plaintiff

5   tampered with evidence effectively preventing Defendant from fully developing its theory of

6   the case, which is that Plaintiff manufactured this action and the evidence he planned to use

7   to support the action (*Id.*).  Plaintiff does not expressly address this argument; but, again,

8   asserts no data has been destroyed (Doc. #133 at 4).

9          Because each previously discussed factor weighs against Plaintiff, this factor becomes

10  the most important factor in determining whether dismissal, and not a lesser sanction, is

11  appropriate.  "The district court abuses its discretion if it imposes a sanction of dismissal

12  without first considering the impact of the sanction and the adequacy of less drastic

13  sanctions." *Malone*, 833 F.2d at 131-132 (citing *United States v. National Medical*

14  *Enterprises, Inc.*, 792 F.2d 906, 912 (9th Cir. 1986)).

15         In considering less drastic sanctions for spoliation of evidence, "[a] federal trial court

16  has the inherent discretionary power to make appropriate evidentiary rulings in response to

17  the destruction or spoliation of relevant evidence. Such power includes the power where

18  appropriate to order the exclusion of certain evidence." *Glover v. BIC Corp.*, 6 F.3d 1318,

19  1329 (9th Cir. 1993).  "Short of excluding the disputed evidence, a trial court also has the

20  broad discretionary power to permit a jury to draw an adverse inference from the destruction

21  or spoliation against the party or witness responsible for that behavior." *Id.* (citing *Akiona*

22  *v. United States*, 938 F.2d 158 (9th Cir.1991)).  A finding of "bad faith" is not a prerequisite

23  to this corrective measure; a finding of "willfulness or fault by the offending party" will

24  suffice. *Unigard v. Lakewood*, 982 F.2d 363, 368-370 & n.2 (9th Cir. 1992).

25         The Ninth Circuit conducts a three-part analysis when determining whether a district

26  court properly considered the adequacy of less drastic sanctions: (1) did the court explicitly

27  discuss the feasibility of less drastic sanctions and explain why alternative sanctions would

28

be inappropriate; (2) did the court implement alternative sanctions before dismissal, and (3) did the court warn the party of the possibility of dismissal before actually ordering dismissal? *Anheuser-Busch*, 69 F.3d at 352; *see also Adriana*, 913 F.2d at 1412-1413 (citing *Malone*, 833 F.2d at 132). The last two criterion of this three-part analysis are inapplicable here because the conduct occurred prior to any order of the court; thus, the court had no opportunity until now to implement alternative sanctions or warn the party of the possibility of dismissal. However, these are only factors the Ninth Circuit considers and are not mandatory requirements prior to ordering dismissal.

One less drastic sanction to an outright dismissal the court must consider is a jury instruction creating an adverse inference in favor of Defendant. "Generally, a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case." *Akiona*, 938 F.2d at 161; *see also* NEV. REV. STATS. § 47.250(3) ("That evidence willfully suppressed would be adverse if produced.").

> The adverse inference is based on two rationales, one evidentiary and one not. The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document....The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.

*Akiona*, 938 F.2d at 161. If a rule excluding evidence, however, would be "futile" and fashioning a jury instruction, which creates an adverse presumption or inference in favor of Defendant, "would leave Defendant[] equally helpless to rebut any material that Plaintiff might use to overcome the presumption", then the first criterion is met and the court can order dismissal. *Leon*, 464 F.3d at 960.

Here, an adverse jury instruction creating a presumption in favor of Defendant that the spoliated evidence was unfavorable to Plaintiff is an appropriate, less drastic sanction for several reasons set forth below.

10

First, Defendant's forensic computer expert found evidence that Plaintiff tampered with the hard drives (Doc. #129 at 6). Plaintiff does not dispute reformatting his hard drives during the period Defendant was requesting production of the hard drives. Although Plaintiff suggests he saved and backed up the data on his hard drives, he has failed to produce any saved, back-up files proving he did so. Plaintiff's credibility is solely within the province of the jury and the jurors will be able to draw they're own inferences based on the timing of Plaintiff's conduct and the failure to produce any saved back-up files.

Second, Defendant's expert did retrieve two (2) letters from Plaintiff's hard drives, which, according to Defendant, "rest at the very foundation of Plaintiff's FCRA claim." (*Id.* at 3). Defendant's expert will apparently testify that Plaintiff created these documents more than one (1) year after Plaintiff claims he created them (*Id.* at 8). Defendant's expert's analysis suggests Plaintiff created both of these documents just five (5) days before Plaintiff's counsel sent a letter to Defendant threatening suit and just one (1) month prior to Plaintiff filing this action (Doc. #129 at 8). Plaintiff argues the allegation that the documents were created after the dates indicated on them is pure speculation and "completely meaningless unless it is known whether the date and time set on the computer were correct when the documents were created." (Doc. #133 at 5). However, as previously stated, Plaintiff's credibility is solely within the province of the jury and Defendant will have the opportunity to present evidence from its computer expert indicating Plaintiff backdated the letters. The jury can then weigh the evidence and determine whether Plaintiff's argument is credible, given the totality of the circumstances.

Third, Defendant asserts that its computer expert retrieved information that shows Plaintiff may have been creating other documents in anticipation of litigation and backdating them to fit his theory of liability (Doc. #129. at 7). Defendant asserts that it only requested its expert examine two (2) documents because this type of analysis is outside the scope of general computer forensic services and costs extra; however, Defendant also asserts there may be more documents that were also not created on the date Plaintiff claims (*Id.* at 7-8).

11

Thus, based on Defendant's own allegations, unlike in *Leon* where the court found more than 2,200 files had not only been deleted, but had also been wiped clean, *Leon*, 464 F.3d at 956, more documents may exist that have not been wiped clean from Plaintiff's hard drives (*Id.* at 8). Accordingly, a jury instruction in presumption of Defendant that the spoliated evidence would have been unfavorable to Plaintiff, coupled with Defendant's own evidence retrieved by its forensic computer expert, does not leave Defendant "helpless to rebut any material that Plaintiff might use to overcome the presumption." *Leon*, 464 F.3d at 960. To the contrary, this motion indicates Defendant does have evidence to rebut any material Plaintiff might use to overcome the presumption that the spoliated evidence would have been unfavorable to Plaintiff – the same evidence Defendant brought before this court to support the instant motion.

Finally, Defendant asserts that Plaintiff's wife performed the alleged back-up of the hard drives and performed the reformatting and reinstallation on one of Plaintiff's laptops (Doc. #140 at 2). Defendant produced an affidavit from Plaintiff's computer technician which supports its assertion (Doc. #140, Exh. A). It appears Plaintiff's wife failed to disclose any of this information to Defendant in her deposition when specifically asked if any work had been performed on the laptops and she has not provided any affidavits regarding the backed-up files or the work she performed (*Id.* at 2). Plaintiff's computer technician states he performed work personally on only one laptop and walked Plaintiff's wife through the reformatting of the second laptop via telephone (Doc. #129, Exh. A). He also confirms that Plaintiff's wife did not request that he back up the information on the hard drive he reformatted and that he, in fact, did not personally back up any information contained on either laptop (*Id.*). Defendant will have the opportunity to present any conflicting testimony at the time of trial and a jury will weigh the evidence and determine the credibility of the parties and witnesses. Thus, Defendant has not shown that a less drastic sanction other than dismissal is inappropriate here.

1    Under these facts, it appears the evidence that Defendant's forensic computer expert

2    retrieved, together with the timing of Plaintiff's conduct, actually lend support to Defendant's

3    theory of the case – that Plaintiff manufactured this action and the evidence he planned to

4    use to support the action – rather than prevents Defendant from fully developing it's theory

5    as Defendant suggests.   Accordingly, for the foregoing reasons, the court finds a jury

6    instruction creating a presumption in favor of Defendant that the spoliated evidence was

7    unfavorable to Plaintiff is a more appropriate, less drastic sanction.

8    Because the court finds a less drastic sanction is appropriate, the court need not

9    address the remaining *Anheuser-Busch* factors.

10                                    **IV.  CONCLUSION**

11    For the reasons set forth above, Defendant's Motion to Dismiss for Spoliation of

12    Evidence (Doc. #129) is **<u>DENIED</u>**.

13    DATED:  May 16, 2008.

15    _____
16    UNITED STATES MAGISTRATE JUDGE