```
____ FILED         ____ RECEIVED
____ ENTERED       ____ SERVED ON
                   COUNSEL/PARTIES OF RECORD

        AUG 17 2011

      CLERK US DISTRICT COURT
        DISTRICT OF NEVADA
BY: _____ DEPUTY
```

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| WES JOHNSON | 3:05-cv-00321-RAM |
| Plaintiff | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| WELLS FARGO HOME MORTGAGE, INC., a California corporation, dba AMERICA'S SERVICING COMPANY, et. al., | |
| Defendants. | |

Before the court are Plaintiff's motion to confirm the arbitrator's award (*see* Doc. # 198) and Defendant Wells Fargo Bank, N.A.'s motion to vacate or modify the arbitration award (Doc. # 210 and Doc. # 215).[1]

**I. FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff Wes Johnson (Plaintiff) alleges that in July 2004, Wells Fargo Bank, N.A. (Wells Fargo), was servicing the loans on two properties Plaintiff had purchased, the Adriatic Avenue property and the Fessenden Street property, located in Portland, Oregon. (Doc. # 66 at 3.)[2] In September 2004, Plaintiff's wife sent in two payments on Loan 56, but inadvertently noted on the checks that they were intended to pay off Loan 55. (Doc. # 210 Ex. A at 5.) Wells Fargo

---

[1] Refers to court's docket number. Wells Fargo originally filed the motion pursuant to Fed.R.Civ.P. 52, 59, and 60. (Doc. # 210.) It subsequently filed the motion pursuant to sections 10 and 11 of the Federal Arbitration Act (FAA). Citations to Wells Fargo's argument will refer to Doc. # 210, which Wells Fargo incorporates by reference into Doc. # 215.

[2] Throughout the litigation, the parties also refer to the two loans as Loans 55 and 56, respectively; derived from the last two digits of the account numbers for the loans.

applied the checks to Loan 55, which it erroneously believed to be in arrears. (*Id.*) As a result, Loan 56 became delinquent. (*Id.*) Plaintiff asserts that Wells Fargo erroneously reported the loans delinquent to credit reporting agencies (CRAs). (Doc. # 66 at 3.) Furthermore, Plaintiff alleges that Wells Fargo foreclosed on Loan 56 and continued to erroneously report both loans delinquent after Plaintiff spent nine months making phone calls and sending correspondence, including cancelled checks and loan documents, verifying the loans were current. (*Id.* at 3-8.) Before the foreclosure sale, Plaintiff sold both the Adriatic Avenue and Fessenden Street properties and repaid the loans in full, but he alleges that as a result of the unfavorable credit reports, he was unable to obtain new loans or refinance existing mortgages, and was denied credit. (*Id.*)

Plaintiff filed suit asserting claims under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et. seq.*, the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681, *et. seq.*, the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et. seq.*, and for negligence. (Doc. # 66.)

On October 29, 2007, the court issued an order granting summary judgment as to Plaintiff's RESPA, FDCPA, and negligence claims, and denying summary judgment as to the FCRA claim. (Doc. # 94.) With respect to the FCRA claim, the court found that the credit reports obtained in connection with Plaintiff's commercial loans do not fall under the FCRA, but those obtained with Plaintiff's personal lines of credit and personal financing are "consumer reports" falling within the coverage of the FCRA. (*Id.* at 9-13.)

On November 30, 2007, Wells Fargo moved for summary judgment as to Plaintiff's surviving FCRA claim, arguing that it is based on credit Plaintiff sought for business purposes. (Doc. # 105.) On May 14, 2008, the court issued an order granting the motion in part, and denying it in part. (Doc. # 153.) The court reiterated that there were genuine issues of material fact as to Wells Fargo's liability under the FCRA. (Doc. # 153 at 9.) Next, the court analyzed each category of Plaintiff's claimed damages individually. The court found that most of Plaintiff's claimed damages related to his inability to secure credit to pursue his business

ventures, and were not recoverable under the FCRA. (Doc. # 153 at 18-30.) However, the court concluded a genuine issue of material fact existed as to whether Plaintiff could recover damages under the FCRA with respect to the following transactions: (1) the James Lane Property (*id.* at 22); (2) the Erna Way property (*id.* at 25); (3) the Sky T stock sale (*id.* at 27-28); and (4) the decrease in credit lines on his Providian and Bank of America credit cards (*id.* at 29-30).

The parties subsequently stipulated to submit the matter to binding arbitration. (Doc. # 194.) They agreed that the Federal Arbitration Act (FAA) would apply, and that all previous orders and rulings entered by the court would be binding, valid, and enforceable. (*Id.*) The parties mutually selected retired justice of the California Court of Appeal, Michael Nott, as their arbitrator, and he heard the matter in January 2009. (*See* Doc. # 210 Ex. A at 2-3.) On February 24, 2009, Justice Nott issued his arbitration award finding Wells Fargo violated the FCRA. (Doc. # 210 Ex. A at 6.) He entered an award of damages in the amount of $260,910 in favor of the Plaintiff, broken down as follows: (1) $150,000 for the Erna Way property; (2) $100,000 in emotional distress; (3) $5,500 for the decrease in credit lines on Plaintiff's Providian and Bank of America credit cards; and (4) $5,410 for foreclosure fees related to the Fessenden property. (Doc. # 210 Ex. A at 6.) In an amendment, the arbitrator awarded Plaintiff $37,069.15 in costs and $427,738.96 in attorney's fees. (Doc. # 210-1 (Ex. B) at 12.) The court confirmed the arbitrator's award and entered judgment. (Doc. # 201-202.)

Wells Fargo filed a motion to vacate or modify the arbitration award, which the court denied. (*See* Doc. # 210, 215, and 225.) Both parties appealed. (Doc. # 204, 226, 229.) The Ninth Circuit Court of Appeals issued its opinion on February 15, 2011, remanding the case with instructions for the court to reconsider the motions to confirm and vacate the arbitrator's award under the FAA. *Johnson v. Wells Fargo Home Mortgage*, 635 F.3d 401, 412, 414-16 (9th Cir. 2011).

## II. LEGAL STANDARD

The parties stipulated to enter into binding arbitration and specifically provided that a party may apply to the court for an order confirming an arbitration award in accordance with

3

the FAA, which the court must grant unless it vacates, modifies or corrects the award. (Doc. # 194.) The Ninth Circuit confirmed the standard the court shall use to review the arbitrator's award is that set forth in the FAA. *Johnson*, 635 F.3d at 414-416.

The district court may modify or correct an award in any of three enumerated situations:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.
9 U.S.C. § 11.

The district court may vacate an arbitration award:
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
9 U.S.C. § 10.

"Although the words 'manifest disregard for law' do not appear in the FAA, they have come to serve as a judicial gloss on the standard for vacatur set forth in FAA § 10(a)(4)." *Johnson*, 635 F.3d at 414 (citing *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc); *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009), *as amended* October 26, 2009; and *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 585 (2008)). "Manifest disregard of the law" is "shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4), which states that the court may vacate 'where the arbitrators exceeded their powers.'" *Comedy Club, Inc. v. Improv West Associates*, 555 F.3d 1277, 1290 (9th Cir. 2009) (citing *Kyocera*, 341 F.3d at 997). "'[M]anifest disregard' has

4

survived *Hall Street* intact [in the Ninth Circuit], and so we are bound to apply it." *Johnson*, 635 F.3d at 415, n. 11 (citing *Comedy Club*, 553 F.3d at 1290-91).[3]

"Manifest disregard of the law" means "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (quotation omitted); *see also Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995). "[I]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Comedy Club*, 553 F.3d at 1290 (internal quotation marks and citation omitted). Furthermore, "[t]he governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." *Collins*, 505. F3d. at 879-80; *see also Carter v. Health Net of California*, 374 F.3d 830, 838 (9th Cir. 2004). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard." *Kyocera*, 341 F.3d at 994.

> The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4).

*Id.* at 1003.

As confirmed by the Ninth Circuit, the FAA "standards are highly deferential to the arbitrator." *Johnson*, 635 F.3d at 414; *see also PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004). The arbitrator's award "may be made without explanation of their reasons and without a complete record of their proceedings." *Bosack*, 586 F.3d at 1104 (citations omitted). "If they chose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." *Bosack*, 586 F.3d at 1104 (quotations and citations omitted); *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d. Cir.

---

[3] As the Ninth Circuit noted, "[c]ourts may also vacate awards that are 'completely irrational...with respect to the contract[,]'" but Wells Fargo did not move to vacate the award on that ground so the discussion is confined to the manifest disregard standard. *Johnson*, 635 F.3d at 414 n. 10.

5

2006) (the court should confirm an award if "a ground for the arbitrator's decision can be inferred from the facts of the case").

### III. DISCUSSION

### A. WELLS FARGO DID NOT WAIVE ITS RIGHT TO VACATE THE AWARD

Contrary to Plaintiff's argument, Wells Fargo did not waive its right to vacate, modify, or correct the arbitration award. *(See* Doc. # 214 11-12, Doc. # 221 at 2-4.). The Ninth Circuit rejected this very contention, finding Wells Fargo's counsel stated his intent to object at the telephonic status conference on the motion to confirm. *Johnson*, 635 F.3d at 413 n. 9. As a result, Wells Fargo is not estopped from making such an argument at this time.

### B. RELIANCE ON A CONSUMER REPORT IN PROVIDING LESS FAVORABLE CREDIT TERMS

Wells Fargo argues the award of damages for the Erna Way property, decrease in credit lines, and foreclosure fees was improper because the award does not specifically refer to a credit report that was relied upon by a lender in extending Plaintiff less favorable credit terms. (Doc. # 210 at 4-5, Doc. #215.)

Plaintiff concedes that the arbitrator's award does not specifically reference a consumer report, but argues that any explicit or implicit findings necessary for the award of damages are assumed to be in support of the award. (Doc. # 258 at 11-15.)

The arbitrator is not required to explain the rationale for his award. *See Bosack*, 586 F.3d at 1104. In other words, the arbitrator was not required to make specific written findings that a credit report was relied on by a lender in awarding damages for the Erna Way property, decrease in credit lines, and award of foreclosure fees. The arbitrator acknowledged he was bound by all prior decisions of the court, and the court specifically found that to recover damages under the FCRA, Plaintiff must show that each transaction at issue involved the use of a consumer report. (Doc. # 153 at 17.) The court can therefore infer that the arbitrator concluded a consumer report was involved in making the damages award under the FCRA. The failure of the arbitrator to reference an explicit finding of reliance on a credit report does not

1  warrant vacatur.

## C. ADRIATIC AND ERNA WAY PROPERTIES

First, Wells Fargo challenges the arbitrator's award of $5,410 in damages for foreclosure fees related to the Adriatic Avenue property. (Doc. # 210 at 5-7.) Specifically, Wells Fargo argues that the Adriatic property was an investment property owned by a limited liability company, and any fees paid related to that property were for a business purpose. (*Id.* at 7.)

The arbitrator awarded the $5,410 in damages for foreclosure fees in connection with the *Fessenden* property, not the Adriatic property. (Doc. # 210-1 (Ex. A) at 8.) Wells Fargo is correct that the court previously ruled that because the Fessenden property was owned by Portland R.E., and Portland R.E. paid the fees associated with this property, this specific sum was not recoverable under the FCRA. (Doc. # 153 at 21-22.) The arbitrator recognized that he was bound by this court's ruling limiting consideration of damages to Plaintiff's losses as a consumer. (Doc. # 210-1 (Ex. A) at 3, 6.) The arbitrator even specifically recognized the court's ruling that the late fees and costs on rental properties were business related, precluding recovery of damages under the FCRA. (*Id.* at 3.) Therefore, in this instance, it is clear from the record that the arbitrator recognized the law governing the FCRA, and disregarded the law by making an award of damages despite the fact that the court explicitly ruled Plaintiff could not recover the $5,410 in damages for foreclosure late fees on the Fessenden property. Therefore, this portion of the arbitrator's award should be vacated.

Second, Wells Fargo argues the evidence showed the Erna Way damages claim is related to a commercial purpose and is not recoverable under the FCRA. (Doc. # 210 at 7.)

The arbitrator found that while the Erna Way property was technically listed as a business property, it was actually a residence that was used by Plaintiff's mother and stepfather, who resided in it rent free. (Doc. # 210-1 (Ex. A) at 8.) Wells Fargo is arguing that the arbitrator made an error in interpreting the facts or the law in concluding this property was a consumer property and not a business property. This is not manifest disregard of the law, and there is no basis to vacate this portion of the award.

7

## D. CREDIT CARDS

Wells Fargo disagrees with the arbitrator's finding that Plaintiff's credit limits were decreased as a result of the late marks Wells Fargo reported to the CRAs. (Doc. # 210 at 8.) Wells Fargo provides letters from Bank of America and Providian and contends they establish that Wells Fargo's reports of late payments played no role in the reduction of Plaintiff's credit limits. (*Id.*, Ex. D and Ex. E.)

Wells Fargo has not established that the arbitrator knew and disregarded the law in this instance. Instead, Wells Fargo merely asserts a disagreement with the arbitrator's interpretation of the facts and law. The letter from Bank of America specifically states, "[i]n reaching our decision, we relied on internal information as well as information in the consumer credit report of the first person named above." (Doc. # 210 Ex. D.) The letter from Providian states, "[w]e received credit information from TransUnion Consumer Relations..." (*Id.* at Ex. E.) The arbitrator could have concluded that while the credit card companies asserted additional reasons for decreasing Plaintiff's credit limits, there was a causal link between the decision and the information reported to the CRAs by Wells Fargo. Simply because the arbitrator did not come to the conclusion Wells Fargo would have preferred, *i.e.*, that the decrease in Plaintiff's credit limits was not related to Wells Fargo's conduct, does not mean that the arbitrator disregarded the law. Thus, there is no basis for vacating this portion of the arbitrator's award.

## E. WELLS FARGO'S LIABILITY UNDER THE FCRA

Wells Fargo argues that the arbitrator failed to make findings regarding the reasonableness of its investigation. (Doc. # 210 at 9-12.) Instead, Wells Fargo contends that the arbitrator only discussed the investigation in broad strokes, and improperly applied a general negligence standard in finding the investigation unreasonable. (*Id.* at 11.) Wells Fargo maintains that it followed the requirements of the FCRA each time it received notice from a CRA that Plaintiff was disputing a debt, and the arbitrator failed to make findings supporting liability for each element of the statute. (*Id.* at 11-12.)

Plaintiff maintains the arbitrator's award must stand because erroneous factual findings

8

or misapplication of the law do not provide a basis for relief. (Doc. # 258 at 16.) In addition, he argues the arbitrator did make a factual finding that Wells Fargo did not conduct a reasonable investigation. (*Id.*)

As the court explained above, the arbitrator is not required to explain the rationale for his award. *Bosack*, 586 F.3d at 1096. In this case, the arbitrator set out a detailed summary of the facts surrounding the dispute, and specifically concluded that Wells Fargo's investigation was unreasonable, inadequate, and untimely under the provisions of the FCRA. (Doc. # 210-1 (Ex. A) at 4-6.) The arbitrator was not required to make specific factual findings regarding the reasonableness of the investigation, and was not required to discuss the investigation in more than what Wells Fargo terms "broad strokes." Wells Fargo has not shown that the arbitrator knew the law under the FCRA and chose to ignore it. At most, Wells Fargo makes an argument that the arbitrator knew the law under the FCRA and misapplied it. Misapplication of the law or facts is insufficient to vacate an arbitral award.

## F. EMOTIONAL DISTRESS DAMAGES

Wells Fargo contends the arbitrator erred in awarding emotional distress damages because: (1) Plaintiff failed to link those damages to the use of a consumer credit report containing derogatory credit information from Wells Fargo; (2) the emotional distress damages were entirely a result of Plaintiff's business downturn; (3) the arbitrator should not have even considered emotional distress damages because the only claim before him was an alleged violation of the FCRA; and (4) Plaintiff's own statements were insufficient to support an award of emotional distress damages. (Doc. # 247 at 14-15.)

Plaintiff counters that Wells Fargo never objected to the award of emotional distress damages at arbitration or in its original moving papers. (Doc. # 258 at 15.) In addition, he argues that he did present testimony concerning the impact of his inability to support his family. (*Id.*)

In awarding Plaintiff $100,000 in emotional distress damages, the arbitrator stated that Plaintiff testified concerning the harm the negative comments Wells Fargo transmitted to the

9

CRAs had on his business, his home life, his relationship with his wife and his health. (Doc. # 210-1 (Ex. A) at 8.)

First, the court cannot conclude that the arbitrator manifestly disregarded the law in awarding emotional distress damages because Plaintiff failed to link the damages to a consumer credit report. As the court found above, the arbitrator is not required to provide a full explanation of his award. Because the arbitrator determined Wells Fargo violated the FCRA, and awarded damages, it is reasonable for the court to infer that he found a link between Plaintiff's damages and a consumer credit report containing derogatory information reported by Wells Fargo.

Second, in examining the emotional distress damages award, the court cannot conclude, as Wells Fargo does, that the emotional distress damages were entirely a result of Plaintiff's business downturn. The arbitrator specifically referenced Plaintiff's testimony concerning the harm the negative comments had on his home life, his relationship with his wife, and his health. (Doc. # 210-1 (Ex. A) at 8.)

Third, Wells Fargo's argument that the arbitrator could not even consider an emotional distress damages claim is unavailing because he could recover emotional distress damages as an element of his *actual* damages. Emotional distress is an element of damages, and not a separate cause of action.

Finally, Wells Fargo's argument that the award should be vacated because Plaintiff's own statements were insufficient to support an award of emotional distress damages is equally unavailing. Wells Fargo relies on *Cousin v. Trans Union Corp*, 246 F.3d 359 (5th Cir. 2001), to support this argument. (Doc. # 247 at 15.) There, the Fifth Circuit discussed the requirement of proof of actual injury for an award of mental or emotional distress in an action brought under 42 U.S.C. § 1983. *Id.* at 371 (citations omitted). The Fifth Circuit stated, "*Carey* requires 'a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award.'" *Id.* (underscore added). There, the court focused on the scope of the testimony given by the plaintiff, but did not say that corroborating testimony

was required, as Wells Fargo suggests. *Id.* Importantly, while the Ninth Circuit has not explicitly addressed what type of evidence is necessary to support an award of emotional distress damages under the FCRA, in other contexts, it has declined to follow the Fifth Circuit's more stringent requirements for emotional distress damages. *See Zhang v. American Gem Seafoods*, 339 F.3d 1020, 1040 (9th Cir. 2003) (upholding emotional damages based only on testimony); *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994) (emotional damages may be awarded based only on testimony or appropriate inference from circumstances). Other districts within the Ninth Circuit agree that the plaintiff's testimony alone can be sufficient to establish emotional distress damages. *See Nelson v. Equifax Information Services, LLC*, 522 F.Supp.2d 1222, 1235 (C.D. Cal. 2007) (finding that plaintiff's testimony alone can establish emotional distress damages); *Acton v. Bank One Corp.*, 293 F.Supp.2d 1092 (D. Ariz. 2003) (rejecting the holding in *Cousin*). Therefore, the court finds there was no manifest disregard of the law in awarding emotional distress damages on the basis of Plaintiff's testimony alone.

## G. WAIVER OF THE ESCROW ACCOUNT REQUIREMENT

Wells Fargo contends the arbitrator erred as a matter of law in finding the previous owners of the loan waived the right to require an impound account on Loan 55. (Doc. # 210 at 12.)

Wells Fargo fails to point out where in the record it is evident that the arbitrator recognized the applicable law and ignored it. Instead, it merely draws a conclusion that the arbitrator erred as a matter of law. This is not manifest disregard of the law.

## H. ATTORNEY'S FEES

Wells Fargo argues that under 9 U.S.C. § 10(a)(4), the arbitrator exceeded his powers by awarding Plaintiff fees and costs for his failed RESPA, FDCPA and negligence claims, and the only authority the arbitrator had to award costs and fees was pursuant to the FCRA. (Doc. # 210 13-16, Doc. # 247 at 20-21.) Wells Fargo also contends that Plaintiff should not recover fees and costs because they are disproportionate to the arbitrator's award. (Doc. # 210 at 13-16.) Finally, it argues that the fees requested by Plaintiff are inflated. (*Id.* at 15-16.)

Plaintiff asserts he is entitled to an award of attorney's fees and costs under the FCRA and

the FAA. (Doc. # 258 at 16.) He also contends the arbitrator found the facts were so intertwined among all causes of action that he found it appropriate to award all of Plaintiff's fees and costs. (*Id.*) Finally, he asserts that the arbitrator's decision on this issue was not irrational so as to constitute manifest disregard of the law, and therefore must stand. (*Id.* at 16-17.)

The arbitrator awarded Plaintiff $37,069.15 in costs, noting that Wells Fargo posed no objection to the amount of costs sought by Plaintiff. (Doc. # 210-1 (Ex. B) at 13.) The arbitrator also awarded Plaintiff attorney's fees in the amount of $427,738.96. (*Id.*) In awarding fees, the arbitrator stated:

> [T]he arbitrator notes that this hotly contested litigation lasted for over three years, and involved thousands of documents. The arbitrator is confident that there is plenty of fault to go around relative to discovery problems. The arbitrator also notes that even though the amount of recovery is less than the attorney fees, it is a fact of life that litigation costs what it costs, regardless of recovery. Mr. Johnson was awarded over a quarter of a million dollars, which is certainly more than a de minimus sum.
>
> The defense request to give a credit against the work the defense lawyers expended on defending against the causes of action that were dismissed is denied. The arbitrator has previously discussed his misgivings relative to the dismissal of the negligence cause of action, and the plaintiff was entitled to test the waters as to the other federal causes of action.

(Doc. # 210-1 (Ex. B) at 13.)

Preliminarily, since Wells Fargo did not object to the arbitrator's award of costs, the court confirms the award in the amount of $37,069.15 in favor of Plaintiff.

With respect to the fees, it is undisputed that the FCRA claim was the only matter before the arbitrator, and a party who is successful in an action brought under the FCRA is entitled to recover costs and reasonable attorney's fees. *See* 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2). Therefore, it is the court's view that the arbitrator did not exceed his powers in awarding fees under the FCRA. However, the court must determine whether the arbitrator exceeded his powers in awarding Plaintiff the entirety of his fees.

While the general rule is that attorney's fees are not recoverable, *see Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), fees may be awarded pursuant to a fee-shifting statute such as the FCRA. *See Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) (citations omitted)

12

(lodestar method is generally the correct method for calculating fees under a fee-shifting statute); *U.S. v. Standard Oil Co. of Calif.*, 603 F.2d 100, 103 (9th Cir. 1979) (citations omitted). Once a party establishes it is entitled to an award of attorney's fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley*, 461 U.S. at 433. Under federal law, reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in *Hensley*. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, a reasonable fee is determined by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Second, the lodestar amount may be adjusted based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006); *Fischer*, 214 F.3d at 1119 (citation omitted).

The relevant *Kerr* factor to be considered in this case is "the results obtained" factor. *Kerr*, 526 F.2d at 70. "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded only on some of his claims for relief." *Hensley*, 461 U.S. at 434. Wells Fargo requests a reduction of the fee award to take into account hours expended in connection with the other claims asserted that were dismissed on summary judgment. Under *Hensley*, this determination is made by answering two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 424.

It appears the arbitrator answered no to the first question. Claims are related if "they involve a common core of facts or are based on related legal theories." *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) (internal quotations omitted). The claims asserted by Plaintiff were all clearly related, arising from the same common core set of facts.

The arbitrator appears to have answered the second question in the affirmative. From the arbitrator's comments, it is reasonable to infer that he determined Plaintiff achieved a

level of success that made the hours reasonably expended a satisfactory basis for making the fee award. "There is no precise rule or formula for making these determinations." *Hensley*, 461 U.S. at 434. "The court necessarily has discretion in making this equitable judgment." *Id.* at 436-37. Proportionality is not the test. *See id.* at 435 n. 11.

The arbitrator concluded that this action involved protracted litigation, and found that the result was certainly more than de minimis. The court cannot conclude the arbitrator exceeded the scope of his powers in awarding Plaintiff the entire amount of fees. This is not a case where the record is clear that the arbitrator disregarded the law, but instead, it is a case where the arbitrator was within his discretion in determining Plaintiff was entitled to the entire award of fees.

Next, while the amount of damages awarded may be compared to the amount of fees sought, a fee award is not required to be proportional to the amount of damages recovered. *See McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009) ($54,012.76 in fees awarded where damages recovered were $15,000).

Finally, Wells Fargo's claim that Plaintiff's fees are inflated was addressed at the hearing on this motion. Wells Fargo argued that the arbitration was completed forty-three days after the notice of lien in this case was filed, and it was irrational to assume Plaintiff could have incurred $265,000 in fees from the time the lien was filed through arbitration. (Doc. # 247 at 23.) At the hearing, Plaintiff's counsel represented that the $265,000 lien filed forty three days before arbitration was not based on fees incurred in this case. Therefore, this argument appears to be moot.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the arbitrator's award of $5,410 in damages for foreclosure fees in connection with the Fessenden property is vacated, and the remainder of the arbitrator's award is confirmed.

**IT IS SO ORDERED.**

The court enters judgment in favor of Plaintiff Wes Johnson, and against Defendant

1 | Wells Fargo Bank, N.A., in the amount of $720,308.11.

2 | **LET JUDGMENT ENTER ACCORDINGLY.**

DATED: August 17, 2011

_____
UNITED STATES MAGISTRATE JUDGE